United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,

v.

Jemel Thompson,

    Defendant.

_____/

Case No. 22-cr-20206

Hon. Linda V. Parker

# GOVERNMENT'S SENTENCING MEMORANDUM

## I.    INTRODUCTION

Jemel Thompson was days away from freedom and decided that he was untouchable. As he dismissed and taunted corrections officers at FCI Milan, he repeatedly told them that he was due to get out and that there was nothing they could do to stop him from going home. After throwing trash out of his cell onto the hallway floor, Thompson and his cellmate were removed to a shower room for holding while staff removed the trash and cleared his cell. Following a dispute with the supervising corrections officer, Thompson was returned to his cell where he proceeded to scrawl expletives and threats against the supervising corrections officer on his cell walls.

When confronted by staff regarding the written threats, Thompson continued to verbally threaten to kill the corrections officer once he was freed. Thompson claims that his disruption and threats spawned from anger he felt at being pinched by the corrections officer while in the shower room awaiting return to his cell. However, even if Thompson subjectively felt justified in lashing out at a corrections officer, threatening to kill the officer and, according to other staff, to kill the officer's family over a perceived wrong was unlawful and self-defeating as it resulted in his continued incarceration without lapse through the filing of this memorandum.

After considering the factors set forth in 18 U.S.C. § 3553(a), the government recommends a sentence of time served followed by a period of supervised release.

## II. STATEMENT OF FACTS

A. <u>Pre-Offense Conduct</u>

On April 13, 2021, Jemel Thompson was sentenced to serve a term of 10 months imprisonment following a supervised release violation in case 20-CR-20512[1]. Thompson expected to be released from FCI Milan,

---

[1] Judgment for Revocation of Supervised Release, Case 2:20-cr-20512-SFC ECF No. 20, PageID.102 Filed 04/13/21.

where he had been serving that term of imprisonment (while also on parole to the Michigan Department of Corrections) on March 11, 2022.

On February 19, 2022, corrections staff located a contraband cell phone that was charging while wrapped in a coat under the pillow where Thompson was laying when called out for the search. Staff was called to take Thompson the Secure Housing Unit (SHU), but Thompson became resistant and began shouting at staff, including threats to assault them: "I will beat your ass before I leave here, and I'll still be going home soon."

On February 23, 2022, Thompson was observed by staff in the SHU dumping debris out of his cell onto the floor of the unit. A different corrections officer than the one Thompson threatened on February 19th escorted Thompson from his cell in the SHU to the shower room where he could be held temporarily while his cell was cleaned and inspected. The escorting officer reported that Thompson repeatedly stated that he was to be released on March 11, 2022, and he was going to assault the officer. Thompson stated that the officer needed to watch out and that he would assault the officer in the parking lot. Thompson was left by the escort officer in his cell as Thompson continued to make threats about what he would do to the officer after his release.

While held in the shower room during his cell search on February 23, 2022, the SHU supervising corrections officer observed Thompson and his cellmate as they were held in the shower room. Thompson claimed after an exchange that the supervising corrections officer reached through the bars and pinched Thompson's nipples. No other corrections staff observed the officer put his hands into the shower room, the officer affirmatively denied pinching Thompson, and although the cell mate initially did not acknowledge seeing anything, he later claimed to see the officer pinch Thompson during a later interview.

B. The Offense Conduct

On February 24, 2022, corrections staff conducted rounds of the SHU, which included a lieutenant and the officer who observed Thompson while he was held in the shower room during his cell sweep the previous day. The officers observed writing on Thompson's cell wall (depicted below) including "I'm going kill [officer]"and confronted Thompson about the writing on the walls and juice spilled all over the floor and the wall across from his cell. Thompson stated to the officer who had observed him the previous day: "I am going to kill [officer] on March 11 when I get out." Thompson got up from his bed and aggressively

approached the cell door with his fists balled up, and then, while make a gesture of a gun with his fingers directed at the officer said, "When I get out on March 11, I am going to come up here with my bloods and kill [officer]."



The lieutenant, who was present, witnessed Thompson making the threats and told Thompson to stop threatening the officer, to which Thompson responded, "I don't give a shit, I'm going to kill him."

Following the exchange, a Bureau of Prisons investigator conducted routine rounds in the SHU. The investigator witnessed Thompson standing at the door and making threats toward staff. Specifically, Thompson stated that he walks out of the facility on March 11, 2022, and there is nothing they could do. Thompson would be waiting for [officer] in the parking lot and would kill him. Thompson went on to say he would take the officer's driver's license to locate the officer's family and kill the family as well. The investigator was unable to get Thompson to calm down and explain the threats and determined that psychology services should meet with Thompson for a potential evaluation.



The investigator photographed the writing on Thompson's cell wall, and while Thompson has since disavowed the threats, it is important to note that the numbers written along with the threat correspond to the remaining days of February (up to 28) before ending on a circled 11—corresponding to Thompson's expected release date of March 11, 2022.

On March 4, 2022, a mental health evaluation was conducted on Thompson by psychology staff at FCI Milan. Thompson did not present any criteria for a mental disorder and admitted to making the threats

against the officer. According to the staff, Thompson justified the threats stating "It's the way I was raised. If someone does something to you, you do something to them." Thompson relayed that he will not get into any trouble for making the threats because he was due to be released.

On March 14, 2022, Thompson was interviewed by agents following his arrest on the Complaint and Warrant in this case. Thompson claimed that the officer in question pinched his nipples while Thompson was being held in the shower room on February 23, 2022. Thompson claimed that a verbal exchange ensued between Thompson and the officer. Thompson denied threatening the officer's family, but stated "I was heated, I don't remember what I said at the time." Thompson said that he said, "I'm going to beat your mother fucking ass." Following the incident, Thompson stated that the officer kept coming by Thompson's cell and provoking Thompson, and that is when Thompson said, "I'm going to kill you."

### III.  SENTENCING GUIDELINES

The United States Probation Department calculated the guideline range as 27 to 33 months. PSR ¶ 49. This determination was made based on the report writer's assessment that Thompson's behavior included two

or more threats in that Thompson included threats to the corrections officer and to his family triggering a +2 enhancement USSG § 2A6.1(b)(2)(A); and that Thompson's threats were toward a government employee and motivated by that status triggering a +3 enhancement under USSG § 3A1.2(a). Along with a base offense level of 12 under 2A6.1(a)(1), Probation determined Thompson's offense level to be 17 before adjustments for acceptance of responsibility.

The parties calculated the guidelines differently prior to the plea. Because Thompson's threats were continuous and contained the same subject matter, the parties anticipated that Thompson's statements throughout the incident would be counted as one continuous threat.

Thompson's threats were directed at a federal corrections officer, while that officer was engaged in his official duties and intended to intimidate that officer; but Thompson's assessment was that the threats were made in retaliation for being pinched and he viewed his actions as a quid pro quo for the perceived assault. Under Thompson's view, the status of the person he threatened was incidental to, and not the motivation, for his actions.

Should the court assess the incident as one continuous threat and adopt the defendant's position as to his motivation, then neither enhancement would apply. Under USSG § 2A6.1(b)(6), if no other enhancement applies and "the offense involved a single instance evidencing little or no deliberation, decrease by 4 levels." Should the court adopt this approach, the defendant's offense level would be 8 prior to acceptance of responsibility adjustments. With a -2 adjustment for acceptance of responsibility under USSG § 3E1.1(a), the defendant's offense level would be 6. Coupled with a criminal history category of IV, his guideline range would then be 6 to 12 months.

### IV.  LAW AND ARGUMENT

Consistent with the Rule 11 Agreement, and in consultation with the victim, the government is recommending a sentence without further imprisonment at this time, credit for time served, and a term of supervised release.

A. **Nature and circumstances of the offense and history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1)**

Jemel Thompson, while on parole from the state, and serving a term of imprisonment for violating federal supervised release, became indignant and belligerent toward corrections staff at FCI Milan. When he was only days away from release, he chose to vent terrible and violent threats toward a corrections officer. That Mr. Thompson remains in custody as of the filing of this memorandum is evidence that Mr. Thompson is his own worst enemy.

Regardless of the perceived provocation, Mr. Thompson has shown that he knows how to make administrative complaints and to seek legal redress when he thinks he's been wronged as evidence by his actions since being charged in this offense. He's contacted the U.S. Marshal's to investigate the assault he's alleged and has signaled an intent to take further legal action.

But instead of exercising his rights following his altercation with the corrections staff, Mr. Thompson let impulse and anger drive his behavior. In looking at his criminal history, it's clear that Mr. Thompson has adopted threatening and violent behaviors to cope with conflict. His

continued incarceration to this point should motivate him to adopt an alternative approach.

The sentence in this case should include conditions of supervision that require cognitive behavior and anger management treatment. Further, he should be precluded from contacting the victim in this case or appearing at his place of employment.

**B.    Seriousness of the offense, to promote respect for the law, and provide just punishment, 18 U.S.C. § 3553(a)(2)(A)**

Every day that Jemel Thompson has remained detained while this case was pending is a day he could have been free if he had been able to control himself when dealing with corrections staff as he approached his release date. His continued incarceration to this point is just punishment for his actions and should work to specifically deter his violation of the rules of his imprisonment and, going forward, his supervision by the court.

The incarceration he has received as a result of his detention both promotes respect for the law and demonstrates the seriousness of threatening to kill a corrections officer. His continued presence in incarceration also serves as an example to the other inmates that heard

Jemel Thompson brag that he could do whatever he wanted in prison and the corrections officers could do nothing about it. The reality is, as it should be, the quickest way to extend a prison stay is to threaten or attack the corrections staff. Mr. Thompson's time incarcerated should serve as an emphatic statement to Mr. Thompson, to the other inmates, and to especially the corrections officers, that these threats will not be tolerated.

## V. CONCLUSION

The government moves this Honorable Court to impose a sentence without further imprisonment at this time, credit for time served, and a term of supervised release.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/Michael Taylor
Michael Taylor
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
(313) 226-9516
michael.taylor3@usdoj.gov

Dated: November 22, 2022

**Certificate of Service**

I hereby certify that on November 22, 2022, I caused the Sentencing Memorandum for the United States to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants of record.

<u>s/Michael Taylor</u>
Michael Taylor
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
(313) 226-9516
michael.taylor3@usdoj.gov